IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**KODACO CO., LTD.**                                                **PLAINTIFF**

**V.**                                    **CIVIL ACTION NO.** 3:23CV211-GHD-JMV

**VALLEY TOOL, INC.; WAREHOUSE 72, LLC;**
**HYDE EXCAVATION; FRANK HYDE, JR.;**
**SASHA HYDE; CAYCE WASHINGTON;**
**MICHELLE WASHINGTON; and JOHN DOES 1-3**         **DEFENDANTS**

**COMPLAINT**
**(Jury Trial Demanded)**

**COMES NOW** Plaintiff KODACO Co., Ltd. ("KODACO"), by and through the undersigned counsel, and files this *Complaint* for damages against Defendants Valley Tool, Inc., WareHouse 72 LLC, Hyde Excavation, Frank Hyde, Jr., Sasha Hyde, Cayce Washington, Michelle Washington, and John Does 1-3 (hereinafter collectively "Defendants"), as follows:

**I.**     **PARTIES**

1. KODACO is a for-profit corporation organized and existing under the laws of the Republic of Korea with its principal place of business located in Korea.

2. Defendant Valley Tool, Inc. ("VTI") is a for-profit corporation organized and existing under the laws of the State of Mississippi with its principal place of business located at 6753 County Road 436, Water Valley, Mississippi 38965. VTI may be served with process through its registered agent for service of process, Cayce Lane Washington, at 6753 County Road 436, Water Valley, Mississippi 38965.

3. Defendant WareHouse 72 LLC ("WH72") is a limited liability company organized and existing under the laws of the State of Mississippi with its principal place of business located at 121 Industrial Road, Water Valley, Mississippi 38965. WH72's members consist of Sasha Hyde,

Frank Hyde, Jr., Cayce Washington, and Michelle Washington, all of whom are citizens of the State of Mississippi. WH72 may be served with process through its registered agent for service of process, Sasha Hyde, at 3 County Road 431, Water Valley, Mississippi 38965.

4. Defendant Hyde Excavation, LLC ("Hyde Excavation") is a limited liability company organized and existing under the laws of the State of Mississippi with its principal place of business located at 1111 County Road 18, Water Valley, Mississippi 38965. Hyde Excavation's sole member is Frank Hyde, Jr., a citizen of the State of Mississippi. Hyde Excavation may be served with process through its registered agent for service of process, Frank Hyde, Jr., at 1111 County Road 18, Water Valley, Mississippi 38965.

5. Defendant Frank Hyde, Jr. is a member and officer of WH72 and Hyde Excavation. He is an adult resident citizen of the State of Mississippi, who resides and/or works at 3 County Road 431, Water Valley, Mississippi 38965, and he may be served there, or wherever else he may be found.

6. Defendant Sasha Hyde is a member and officer of WH72. She is an adult resident citizen of the State of Mississippi, who resides and/or works at 3 County Road 431, Water Valley, Mississippi 38965, and she may be served there, or wherever else she may be found.

7. Defendant Cayce Washington is a member and officer of VTI and WH72. He is an adult resident citizen of the State of Mississippi, who resides and/or works at 6753 County Road 436, Water Valley, Mississippi 38965, and he may be served there, or wherever else he may be found.

8. Defendant Michelle Washington is a member and officer of VTI and WH72. She is an adult resident citizen of the State of Mississippi, who resides and/or works at 6753 County Road 436, Water Valley, Mississippi 38965, and she may be served there, or wherever else she may be found.

9. John Does 1-3 are other persons and/or entities that are vicariously or directly liable for the injuries and damages to KODACO and/or for the actions or inactions of the named Defendants and/or for the design and operation of the subject warehouse. Said John Doe Defendants, if any, are currently unknown after diligent search and investigation.

## II. JURISDICTION

10. This civil action presents a claim for damages arising from an incident that occurred in Yalobusha County, Mississippi, on or about July 30, 2022. The amount in controversy exceeds $75,000.00. There is complete diversity of citizenship between the parties: KODACO is a citizen of the Republic of Korea, while all the Defendants are citizens of the State of Mississippi. Therefore, this civil action may properly be brought in a district court of the United States pursuant to 28 U.S.C. §1332.

## III. VENUE

11. A substantial part of the events or omissions giving rise to this civil action occurred in Yalobusha County, Mississippi. Therefore, pursuant to 28 U.S.C. §1391(b)(2) and 28 U.S.C. §104(a)(2), the proper venue for this civil action is in the Oxford Division of the United States District Court for the Northern District of Mississippi.

## IV. FACTS

**KODACO-VTI STORAGE AGREEMENT**

12. KODACO is a Korean-based company that provides products to the automobile parts manufacturing industry, including manufacturers and suppliers operating in Mississippi and elsewhere.

13. On October 21, 2015, KODACO and VTI entered a Storage Agreement ("the Agreement"). *See* Exhibit A – *Storage Agreement*. Pursuant to the Agreement, VTI was responsible for the successful storage of products deposited by KODACO at the VTI warehouse

located at 101 Industrial Park Drive, Water Valley, Mississippi, 38965. The Agreement included the following provisions:

> *Article 3 (Storage of the Product)*
>
> *Valley Tool shall, in good faith and with duty of care, store the Product and maintain the forms and conditions for the Product as is Valley Tool receives the Product from KODACO. In case that the Product requires a special management because of its nature, Valley Tool shall take all necessary measures and install fans, windows, and storage racks, for storing the Product at Valley Tool's cost according to common practices of transaction.*
>
> *Valley Tool shall not, without prior written consent of KODACO, change the storage place, storage facilities, storage methods of the Product, or mix the Product with other Customer's goods in the Warehouse, or make a third party to store the Product.*
>
> *Article 5 (Insurance)*
>
> *Valley Tool shall insure the Product against fire and burglary and maintain the policy for the Term of this Agreement on its own cost and provide KODACO with a certificate of the respective insurance policies, including damages considered "an act of God" situation, i.e., Tornado, Wind storm, etc.*
>
> *Article 12 (Damages)*
>
> *Valley Tool shall compensate KODACO for damages or losses of the Product unless Valley Tool successfully proves that Valley Tool or its employee has provided its services required for storing the Product in good faith.* See Exhibit A.

14. The Agreement ran for an initial three-year term and automatically renewed for three-year terms thereafter, unless terminated by either party with one month's notice. Exhibit A at p. 8, Article 12.

15. The Agreement allowed for modifications and amendments only upon agreement by both parties. *Id*, at p. 10, Article 13.

16. Attached to the Agreement was an incorporated list labeled the Performance Standard of Storage Service ("Performance Standard"). Exhibit A at pp. 16-23. Said Performance Standard included the following provisions:

{D2098937.1}  4

*Valley Tool shall compensate for the damaged products which may not be releasable to KODACO's clients in case such damages are due to causes attributable to Valley Tool.*

*Valley Tool shall secure exclusive space for KODACO Product.*

*The Product and skids of KODACO and those of other companies shall not be consolidated or stored together.*

*Valley Tool shall make it a rule to stack skids of KODACO product only up to Two (2) levels. Id.*

17. The Agreement continued to operate between KODACO and VTI from its inception to the date of the subject fire. At some point after the inception of the Agreement and before the date of the subject fire, WH72, Frank and Sasha Hyde ("the Hydes"), and Cayce and Michelle Washington ("the Washingtons") assumed the responsibilities and obligations of VTI pursuant to the terms of the Agreement.

**VTI AND WH72'S WAREHOUSING OPERATIONS**

18. Defendants VTI, WH72, the Hydes, and the Washingtons are the individual and corporate owners and operators of a warehousing business called Warehouse 72, which operated a physical warehouse located in Yalobusha County, Mississippi.

19. VTI is a warehousing business that operated under the name Valley Tool in Yalobusha County, Mississippi prior to the opening of WH72. The Washingtons, husband and wife, are the only two officers of VTI.

20. WH72 was formed on November 20, 2015. The Washingtons, husband and wife, and the Hydes, husband and wife, are the four members and officers of WH72.

21. Five days after its formation, WH72 purchased the property and building ("subject warehouse") located at 121 Industrial Park Drive, Water Valley, Mississippi 38965 in the W.E. Gardiner Industrial Park. WH72 accomplished this immediate purchase of property with the

professional and financial support of VTI and its owners and operators, who were experienced in warehouse operation.

22. Warehousing operations at the subject warehouse began almost immediately after its purchase by WH72 and after the Hydes and the Washingtons assumed control of the subject warehouse.

23. VTI merged its warehousing operation into WH72 at the subject warehouse, constituting a continuation of VTI's business into WH72. WH72 continued to store property at the subject warehouse under agreements between customers and VTI, including the Agreement between KODACO and VTI.

24. The Hydes and the Washingtons were personally involved in the day-to-day operation of their warehousing business at the subject warehouse. VTI and its owners and officers, the Washingtons, continued VTI's means and methods of warehouse operations under the new corporate entity WH72.

25. The prior warehouse originally operated by VTI under the Washingtons did not have any heat, fire, or smoke detection devices, heat or fire suppression devices, or any lightning protection systems. VTI's means and methods of operations in these and other respects were continued into the operation of the subject warehouse with the consent of the owners and operators of WH72, namely the Hydes and the Washingtons.

26. The owners and operators of WH72 and the subject warehouse did not equip the subject warehouse with any heat, fire, or smoke detection devices, any heat or fire suppression devices, or any lightning protection systems. These devices and systems were readily available from 2015 to present.

27. Upon information and belief, VTI did not (1) have a chief risk officer, chief risk management officer, or any similar position, (2) employ outside risk professionals, (3) undergo

risk assessments or audit, or (4) otherwise manage its operations to identify and eliminate risks. The owners and operators of WH72 carried this management philosophy and manner of operations into the subject warehouse.

28. The owners and operators of WH72 did not (1) engage any consultants to assist them in operating the subject warehouse in conformity with industry standards, (2) engage any fire protection experts to advise them in identifying and responding to fire risks, or (3) advise customers that the subject warehouse did not engage in any risk management practices.

29. The owners and operators of WH72 operated the subject warehouse in a manner that included (1) blocking means of ingress and egress with stored products, (2) overcrowding shelves with stored product, and (3) comingling stored product between different manufacturers/customers.

30. In July 2022, VTI and WH72 jointly operated the subject warehouse, associating with one another to carry out a single business enterprise for profit, for which purpose they combined their property, money, efforts, skill, and knowledge. Said joint venture was formed for the mutual benefit of VTI and WH72 with an understanding that they were to share in profits and losses and each have a voice in the joint venture's management.

**THE SUBJECT FIRE**

31. On July 30, 2022, KODACO had approximately $3,500,000 worth of business property stored at the subject warehouse owned and operated by VTI, WH72, and their owners and officers.

32. Surveillance video from a building located near the subject warehouse shows that the subject warehouse was struck by lightning at approximately 5:16 p.m. on July 30, 2022.

33. The lightning strike started a small fire inside the subject warehouse, which then progressed and grew at a slow rate over at least two hours ("subject fire").

34. More than two hours after the subject fire stated, a law enforcement officer patrolling the industrial park noticed smoke coming from the subject warehouse and reported it to the local fire department at approximately 7:30 p.m. The local fire department arrived on scene at 7:37 p.m.

35. Upon arrival at the scene, firefighters attempted to extinguish the subject fire. These efforts were hindered by delayed notice and WH72's practice of blocking means of ingress and egress of the subject warehouse.

36. In the midst of the firefighters' efforts to extinguish the fire, Frank Hyde, Jr., using a track hoe owned and operated by Hyde Excavation, removed portions of the wall of the subject warehouse, presumably to allow access to firefighters. Removal of the wall exacerbated the fire by quickly allowing additional, large amounts oxygen into the building, feeding the flames.

37. Ultimately, the fire could not be extinguished, and firefighters resigned themselves to preventing the spread of the fire beyond the subject warehouse.

**AFTERMATH OF THE SUBJECT FIRE**

38. After the subject fire, KODACO discovered that VTI, WH72, the Hydes, and the Washingtons failed to install, maintain, or operate any kind of lightning suppression system on the subject warehouse. KODACO further discovered that VTI, WH72, the Hydes, and the Washingtons failed to install, maintain, or operate a fire suppression system or a fire alarm or warning system at the subject warehouse.

39. KODACO lost approximately $3,500,000 worth of property that was in the subject warehouse pursuant to the Agreement with VTI, WH72, the Hydes, and the Washingtons.

40. To satisfy its business obligations, KODACO had to fly replacement materials to the U.S. and expedite ground transportation, at a cost to be fully proven during the continuation of this matter.

41. KODACO suffered other consequential and incidental losses as a result of the subject fire, which include, but are not limited to cost of investigation the fire, inventory management expenses caused by the subject fire and property loss, lost goodwill in the industry, attorneys' fees, litigation expenses, and costs of court.

42. KODACO intends to uncover other facts supporting its claims against all Defendants during discovery.

43. Other facts will be shown at trial where this *Complaint* will be amended to conform to the evidence.

## V. CAUSES OF ACTION

### COUNT I – PIERCING THE CORPORATE VEIL OF VTI AND WH72

44. KODACO realleges and incorporates by reference the prior allegations is if fully set forth herein.

45. Prior to the filing of this *Complaint*, VTI and WH72 failed to procure insurance coverage sufficient to cover the losses sustained by KODACO. These entities operated the subject warehouse, where they stored a large amount of valuable property. These entities and their owners and operators, the Hydes and the Washingtons, expressly agreed to carry insurance that would reimburse KODACO if its inventory stored in the subject warehouse was damaged by fire, burglary, act of God, or any other damage caused by the entities or their employees. Specifically, Defendant Cayce Washington signed the Agreement, signifying his express agreement to carry insurance in favor of KODACO. *See* Exhibit A. However, these entities and their owners and operators breached that contractual obligation. To the extent that the claims asserted herein exceed the amount of insurance available to these entities, KODACO seeks to pierce the corporate veils of VTI and WH72 to impute liability on their members, owners, and officers, the Hydes and the Washingtons.

46. KODACO is not been aware of any insurance coverage available to Hyde Excavation based on its involvement and the involvement of its sole member, Frank Hyde, Jr., in exacerbating the subject fire. To the extent that the claims asserted against Hyde Excavation exceed the amount of insurance available to it, KOACO seeks to pierce the corporate veil of Hyde Excavation to impute liability on its sole member, owner, and operator, Frank Hyde, Jr.

47. In the event VTI. WH72, and/or Hyde Excavation fail to have adequate insurance coverage for the alleged damage and the Hydes and the Washingtons raise and rely on the corporate veil of any of these Defendant entities, KODACO alleges that, collectively and individually, the Hydes and the Washingtons are the sole or primary owners, members, officers, directors, and/or employees of the Defendant entities; that they are together or separately the sole or primary decision maker(s) for that Defendant entity; and that all or most income of that Defendant entity accrues to the benefit of them.

48. In the event VTI, WH72, and/or Hyde Excavation fail to have adequate insurance coverage for the alleged damage and the Hydes and the Washingtons raise and rely on the corporate veil of any of these Defendant entities, KODACO alleges that the Defendant entity does not have an operating agreement that controls the corporate decision-making process nor the operational formalities of the entity; rather, there are no outside decision-makers and all decisions are made by the Hydes and the Washingtons without any corporate control or control or oversight by any board or other owners or members. The Hydes and the Washingtons are the sole decision-makers, and their decisions are not governed by corporate rules.

49. KODACO was frustrated in its expectations and has a reasonable expectation of performance from VTI, WH72, the Hydes, and the Washingtons in their operation of the subject warehouse. These Defendants, both contractually and in past performance, agreed to provide insurance that would be sufficient to cover any KODACO property destroyed as a result of fire,

burglary, and/or act of God while it was stored in the subject warehouse. If there is no such insurance and any Defendant entity involved lacks assets to satisfy judgment, disregard of that entity is necessary to fulfill KODACO's reasonable expectations and to pierce the corporate veil to impute liability to the Hydes and the Washingtons.

50. Any involved Defendant entity, through the direction and failure of the Hydes and the Washingtons, have disregarded corporate formalities and abused the corporate form to such an extent that the corporate veil of that entity should be cast aside, and liability should be imputed to the Hydes and the Washingtons, jointly and severally.

51. If any of the Defendant entities fail to have adequate insurance coverage for KODACO's alleged damages and the Hydes and the Washingtons raise and rely on the corporate veil of any of these Defendant entities, KODACO alleges that an equitable result is achieved by disregarding the corporate formalities and holding the Hydes and the Washingtons personally liable for any fault of that entity as that entity has no or insufficient reasonably collectible assets, and without piercing the corporate veil, Plaintiff will be unable to recover its judgment.

52. If any of the Defendant entities fail to have adequate insurance coverage for KODACO's alleged damages and the Hydes and the Washingtons raise and rely on the corporate veil of any of these Defendant entities, alternatively, KODACO alleges that the Hydes and the Washingtons operated the entity in such a fashion that the entity is nothing more than their alter ego. Accordingly, the corporate formality should be cast aside, and liability imputed to the Hydes and the Washingtons, jointly and severally.

**COUNT II – BREACH OF CONTRACT - VTI, WH72, THE HYDES, AND THE WASHINGTONS**

53. KODACO realleges and incorporates by reference the prior allegations is if fully set forth herein.

54. Pursuant to the Agreement, VTI, WH72, the Hydes, and the Washingtons agreed to safely store all warehoused goods stored by KODACO in the subject warehouse and agreed that they were liable for all products destroyed while warehoused at the subject warehouse.

55. These Defendants failed to safely store KODACO's warehoused goods and failed to pay KODACO for all of its inventory destroyed in the subject fire. Therefore, these Defendants breached the Agreement.

56. Pursuant to the Agreement, VTI, WH72, the Hydes, and the Washingtons agreed to insure the inventory stored by KODACO in the subject warehouse against fire, burglary, and acts of God.

57. These Defendants failed to procure the insurance necessary to protect the entire extent of KODACO's inventory stored at the subject warehouse that was destroyed because of the subject fire. Therefore, these Defendants breached the Agreement.

### COUNT III – NEGLIGENT MISREPRESENTATION - VTI, WH72, THE HYDES, AND THE WASHINGTONS

58. KODACO realleges and incorporates by reference the prior allegations is if fully set forth herein.

59. As alleged herein, VTI, WH72, the Hydes, and the Washingtons agreed to insure the inventory stored by KODACO in the subject warehouse against fire, burglary, and acts of God.

60. These Defendants' failure to procure the agreed upon insurance for KODACO's inventory stored in the subject warehouse as required by the terms of the agreement constitutes a negligent misrepresentation.

61. These Defendants' misrepresentation was material and significant, because, without such agreement to insure its inventory, KODACO would not have entered into the Agreement with these Defendants.

62. In furthering this misrepresentation, these Defendants failed to exercise that degree of diligence and expertise KODACO is entitled to expect of them as warehouse operators.

63. KODACO has suffered the damages asserted herein as a direct and proximate result of its reasonable reliance on these Defendants' misrepresentation regarding their agreement to insure KODACO'S inventory.

**COUNT IV – BREACH OF BAILMENT - VTI, WH72, THE HYDES, AND THE WASHINGTONS**

64. KODACO realleges and incorporates by reference the prior allegations is if fully set forth herein.

65. KODACO was the owner of property. That property was delivered to the subject warehouse for storage in good condition. VTI, WH72, the Hydes and the Washingtons accepted and stored the property. The subject warehouse, owned and operated by these Defendants, was in possession and control of the KODACO property at all relevant times. The relationship between KODACO and these Defendants was for mutual benefit. KODACO received the storage of its property, while these Defendants received payment.

66. As bailees, these Defendants owed KODACO the duty of reasonable care in the storage of the property. *Harry Dole Dodge of Pascagoula, Inc. v. Cox*, 246 So.2d 918, 919 (Miss. 1971) (providing bailee "is bound to that degree of diligence which the manner and nature of the bailment make it reasonable to expect of him.").

67. KODACO's delivery of the property in good condition and subsequent damage creates a *prima facie* presumption of these Defendants' negligence. *Pope v. Andrews*, 361 So.2d 71, 72 (Miss. 1978). The burden of proof rests on these Defendants at trial.

68. If KODACO carries any burden of proving negligence, KODACO shows that these Defendants were negligent as bailees by the actions and inactions alleged in this *Complaint*.

69. These Defendants' failure to satisfy their duties as bailees proximately and legally caused KODACO's damages alleged herein.

**COUNT V – NEGLIGENCE AND NEGLIGENCE *PER SE* – VTI, WH72, THE HYDES, AND THE WASHINGTONS**

70. KODACO realleges and incorporates by reference the prior allegations is if fully set forth herein.

71. Under general negligence principles, every business has the general duty to exercise reasonable care in carrying out business activities. VTI, WH72, the Hydes, and the Washingtons were required to exercise reasonable care in the storage and possession of KODACO's property.

72. Mississippi law also imposes a statutory duty of reasonable care on warehouses. MISS. CODE ANN. §75-7-204(a) provides:

> A warehouse is liable for damages for loss of or injury to the goods caused by its failure to exercise care with regard to the goods that a reasonably careful person would exercise under similar circumstances. However, unless otherwise agreed, the warehouse is not liable for damages that could not have been avoided by the exercise of that care.

This statute was designed to protect KODACO from the type of harm it suffered in this matter. Violation of this statute is negligence *per se*.

73. Lightning suppression systems are designed to divert lightning strikes from direct building hits or contacts and eliminate damage and fires associated with lightning strikes. In the event an appropriate lightning suppression system had been installed and used on the subject warehouse in the exercise of due diligence and ordinary care by VTI, WH72, the Hydes, and the Washingtons, the lightning strike and subject fire would have been avoided. The failure by those Defendants to employ an appropriate lightning suppression system on the subject warehouse was the proximate and contributing cause of KODACO's damages.

74. Fire suppression systems are designed to extinguish fires when they begin, thereby eliminating damage from those fires. In the event an appropriate fire suppression system had been

installed and used at the subject warehouse in the exercise of due diligence and ordinary care by VTI, WH72, the Hydes, and the Washingtons, any fire would have been extinguished and damage to KODACO avoided. The failure by these Defendants to employ a fire suppression system at the subject warehouse was the proximate and contributing cause of KODACO's damages.

75. Fire alarm and warning systems are designed to notify the owner and fire department of fires when they begin in order to permit immediate response to the fire for extinguishment. In the event an appropriate fire alarm and warning system had been installed and used at the subject warehouse in the exercise of due diligence and ordinary care by VTI, WH72, the Hydes, and the Washingtons, any fire would have been responded to in a timely manner and damage to KODACO avoided. The failure by these Defendants to employ a fire alarm and warning system at the subject warehouse was the proximate and contributing cause of KODACO's damages.

76. VTI, WH72, the Hydes, and the Washingtons failed to exercise ordinary care to safely store KODACO's inventory stored at the subject warehouse, causing KODACO damage through the destruction of its warehoused products by fire. These Defendants' negligent acts included, but are not limited to, the failure to employ, maintain, and operate an appropriate lightning suppression system, fire suppression system, and fire alarm and warning system.

77. In addition to all duties otherwise set forth herein, these Defendants' duties to KODACO include, but are not limited to: the duty of reasonable care in the storage and protection of its property under statute and common law; the expressed duty to provide recovery for damage to KODACO's property caused by the subject warehouse; the duty to return KODACO's property to it in good condition; the duty to operate its business in a reasonably safe manner; the duty to warn KODACO of risks and danger to its property; and all other duties, imposed and assumed, provided by law.

78. These Defendants breached those duties by the actions and inactions alleged herein, which include, but are not limited to: the failure to provide heat, smoke and fire detection devices; the failure to provide fire suppression devices; the failure to provide lightning protection devices; the failure to properly space warehouse inventory; the failure to properly use non-flammable storage materials; the overuse of flammable storage materials; the organization of the warehouse in way that blocked methods of ingress and egress; the failure to operate the warehouse in a reasonably prudent manner; the failure to warn KODACO of risks and dangers to KODACO's property; the failure to follow and conform to industry standards; the failure to identify and either warn of or eliminate risks created by their operating procedures; and other actions and inactions which will be shown at trial where this *Complaint* will be amended to confirm to the evidence.

79. The fire was started by lightning, but the fire would not have started at all if these Defendants had reasonably protected the building from lightning.

80. While the fire was started by lightning, the fire would not have progressed outside of a limited, controlled area but for these Defendants' negligence.

81. As a result of the negligence of these Defendants, KODACO suffered damage through the destruction of its inventory stored at the subject warehouse.

### COUNT VI – NEGLIGENCE – HYDE EXCAVATION AND FRANK HYDE, JR.

82. KODACO realleges and incorporates by reference the prior allegations is if fully set forth herein.

83. Upon information and belief, Defendant Frank Hyde, Jr., owner and operator of Hyde Excavation, has prior firefighting experience that would have included training on the effects of oxygen on a fire.

84. Instead of stifling the subject fire, Frank Hyde, Jr. used equipment owned and operated by Hyde Excavation to detach a wall from the subject warehouse. Upon information and

belief, this removal allowed large amounts of oxygen to enter the subject warehouse and feed the subject fire.

85. Frank Hyde, Jr., individually and as the owner and operator of Hyde Excavation, failed to exercise ordinary care for KODACO's inventory stored within the subject warehouse, causing KODACO damage through the exacerbated destruction of its warehoused products by fire. These Defendants' negligent acts included, but are not limited to, exacerbation of the subject fire.

86. As a result of the negligence of these Defendants, KODACO suffered damage through the destruction of its inventory stored at the subject warehouse.

### COUNT VII – GROSS NEGLIGENCE – ALL DEFENDANTS

87. KODACO realleges and incorporates by reference the prior allegations is if fully set forth herein.

88. The failures alleged herein by all of the Defendants were so negligent and/or reckless as to constitute a willful, wanton, or reckless disregard for the safety of the property of others for which punitive damages must be assessed against those Defendants.

89. Defendants VTI, WH72, the Hydes, and the Washingtons willfully disregarded their contractual agreement to procure insurance for the inventory stored by KODACO in the subject warehouse against fire, burglary, and acts of God.

90. Defendants knew that fire was a risk to their customers' property and willfully disregarded the risk.

91. Fire, smoke and heat detection systems are common, readily available and relatively inexpensive. Likewise, fire suppression systems are known, available and inexpensive. Lightning protection systems are well known safety features on large metal buildings like the subject warehouse. Defendants knew that they could feasibly protect their customers' property from fire.

92. Defendants' failure to do anything to protect the subject warehouse and its contents from fire, not even install a fire alarm or even attempt to determine the feasibility of protective systems, evidences a wanton and reckless disregard for the safety of others and others' property and justifies the imposition of punitive damages against them and in favor of KODACO.

93. After the subject fire, Hyde Excavation was hired to clean up the subject warehouse. WH72 sent KODACO a letter advising that it would be responsible for a proportionate share of those cleanup costs, which would be deducted from its salvage recovery. Upon information and belief, these cleanup costs were covered by insurance. If Defendants received insurance proceeds for the cleanup, charging KODACO for those same costs through Hyde Excavation, which exacerbated the subject fire, is unconscionable and further grounds for punitive damages against the Defendants.

94. For the reasons provided herein and others to be shown at trial, KODACO is entitled to an award of punitive damages, costs, and attorneys' fees.

## VI. DAMAGES

95. KODACO realleges and incorporates by reference the prior allegations is if fully set forth herein.

96. The value of KODACO property stored at the subject warehouse and in Defendants' possession at the time of the subject fire was approximately $3,500,000.

97. KODACO's inventory stored in the subject warehouse at the time of the subject fire lost almost all marketable value. Defendants have offered to pay KODACO for the salvage value of KODACO's damaged property. Using Defendants' offer as the actual salvage value of KODACO's property after the subject fire, which is not admitted herein, KODACO lost approximately $3,500,000 minus the salvage value in property value as a result of Defendants' actions and inactions.

98. KODACO's increased business and supply chain costs are ongoing. As a result of the fire, KODACO had to fly replacement parts from Korea to the U.S. and expedite ground transportation. These costs will be quantified and shown at a trial of this matter and are expected to exceed $3,000,000.

99. KODACO has incurred and demands recovery for additional costs for investigation, litigation, court costs, attorneys' fees, and all other consequential or incidental costs, fees, damages, or expenses.

100. KODACO demands pre- and post-judgment interest and all other damages allowed by law, including punitive damages, as set forth above.

## VII. DEMAND FOR JURY TRIAL

101. KODACO demands a trial by jury of all claims set forth herein.

**WHEREFORE, PREMISES CONSIDERED,** KODACO respectfully prays, that upon a trial of this action, a judgment against all Defendants for all damages proven, plus pre- and post-judgment interest, punitive damages, attorneys' fees, and costs be entered in its favor.

**RESPECTFULLY SUBMITTED,** this the 6th day of June, 2023.

                                          **KODACO CO., LTD.,**
                                          **PLAINTIFF**

                              By:   */s/Robert F. Stacy, Jr.*
                                      OF COUNSEL

ROBERT F. STACY, JR. – MS BAR NO. 7764
rstacy@danielcoker.com
LAUREN E. WARD – MS BAR NO. 105019
lward@danielcoker.com
DANIEL COKER HORTON & BELL, P.A.
265 NORTH LAMAR BOULEVARD, SUITE R
POST OFFICE BOX 1396
OXFORD, MISSISSIPPI 38655-1396
TELEPHONE: 662-232-8979
FACSIMILE: 662-232-8940